## WOODS VS WOODS.

Opinion delivered October 19, 1904.

1. *Appeal—Report of Master—Not a Final Judgment.*

   An appeal will not lie from an order confirming a report of a master in chancery, as the same is not a final judgment.

2. *Appeal—Record—Assignment of Errors—Dismissal for want of.*

   An appeal will not be entertained when the record discloses an entire absence of the assignment of errors required by rule 10 (4 Ind. Ter. Rep. 753) of this court.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Hattie Woods against George W. Woods. Order confirming report of a master. Defendant appeals. Dismissed.

*Gilbert & Gilbert* and *J. H. Harper*, for appellant.

*Morris & Hayes,* for appellee.

RAYMOND, C. J. This suit is an action for divorce commenced by appellee against appellant in the Southern District, September 28, 1900. The amended bill, filed January 23, 1901, reads: "The plaintiff, Mrs. Hattie Woods, complaining of the defendant, Geo. W. Woods, most respectfully represents and shows to the court that she is a citizen of the Choctaw Nation, and resides near Atlee, in the Chickasaw Nation, and that the

defendant, Geo. W. Woods, is a citizen of the United States, and resides nearer Ryan than any other place of holding court in said Southern District, and that she has resided in the jurisdiction of this court for twenty-five years. For cause of action, plaintiff says that she and the defendant were married at Grady, Indian Territory, on the ————— day of October, 1890, and continued to live together as husband and wife until the ————— day of September, 1900, when defendant left plaintiff, since which time they have lived separate and apart; that for the past ————— years defendant has pursued a course of cruel and barbarous treatment towards plaintiff, and has offered such indignities towards plaintiff as to render her condition intolerable; that defendant has at numerous times and at different times within the last years assaulted plaintiff and threatened her life, and has cursed and abused her; that there has been born to plaintiff and defendant during their said marriage two male children, whose names and ages are as follows: Willie Mitchell Woods, age 5½ years, and Eddie Woods, age 3½ years. She shows to the court that she is a suitable and proper person to have the care and custody of said children; that this cause of divorce occurred within the Southern District of the Indian Territory within five years next before the commencement of this suit. The plaintiff further shows to the court that she is the owner and entitled to the possession of the following described lands: The Roller place—now occupied by G. R. Tucker—the Oldham place, the Lines place, the Brooks Todd place, the Frank Thompson place, the Fannie Reynolds place, the Will Tulley place, and the Pegram place, all located near the town of Atlee, Indian Territory, and consisting of about three sections of land, a more particular description of which cannot now be given; that she has been holding the same, as an Indian citizen, for several years; and that the defendant has been renting out and looking after said property for her, and that since said separation she has endeavored to get possession of said property, but that the defendant fails

and refuses to turn same over to her, and still continues to rent, and receive the rents therefrom. Premises considered, plaintiff asks that on final hearing she have judgment forever dissolving the bonds of matrimony existing between plaintiff and defendant, and that she be awarded the custody of said children, and have judgment for the possession of said lands, for her costs in this behalf expended, and for such other and further relief as to the court may seem equitable and just."

On the 30th day of September, 1901, there was an application by complainant for a restraining order, reading: "To the Hon. Judge of said Court: Now comes the plaintiff, Mrs. Hattie Woods, in the above styled and entitled cause, and respectfully shows to the court that she is the owner and entitled to the possession of the lands described in plaintiff's amended complaint filed herein on the 23d day of January, 1901; that she has rented said lands for the year 1901 to various tenants, and through said tenants she is in possession of the same; that the rents on said lands are now due and payable; that defendant is harassing the tenants on said lands, and is interfering with the payment and collection of rents thereon; that defendant is endeavoring to collect said rents by threatening the tenants on said lands; that, unless defendant be restrained, a multiplicity of suits will result to collect the rents. That plaintiff is in possession of the children named in plaintiff's amended complaint filed herein on January 23, 1901, and that she is a suitable and proper person to have the care, custody, and keeping of said children; that defendant is interfering with plaintiff's possession of said children; that defendant is a shiftless, worthless person; that he is wholly insolvent, and that plaintiff has no adequate remedy at law, and that, unless defendant is restrained from interfering with plaintiff's possession of said land, and with the payment of rents and collection of rents thereon, great and irreparable injury will be done; the defendant is threatening to

sell said premises, and, unless restrained, will do so, and such sale would cast a cloud upon plaintiff's title, and result in great damage; that, if defendant be notified of this application for restraining order, he would greatly increase his efforts to collect said rents and prevent the payment of the same to plaintiff, thereby harassing the tenants and greatly aggravating the injury to plaintiff. Wherefore, premises considered, plaintiff asks that pending final hearing of the above-styled cause she be granted a temporary restraining order, restraining defendant, his agents, servants, and employes or those claiming under or through him, from in any manner interfering with plaintiff's possession of said lands, and from exercising any acts of control whatever over the same, from the harassing the tenants thereon, and from interfering with the payment and collection of the rents on said lands, from interfering with plaintiff's possession of said children, and for such other and further relief as to the court may seem equitable and just."

Upon the same day the trial judge entered an order restraining the respondent from collecting rents, etc., until the court's further order. That order reads: "Now, on this 26th day of September, 1901, came on to be heard the plaintiff's application for temporary restraining order, restraining defendant, his agents, servants, employes, and those acting through or under him, from interfering with plaintiff's possession of the hereinafter described lands, from harassing the tenants, and from interfering with the payment and collection of rents thereon, and from interfering with plaintiff's possession of the hereinafter named children. The court being fully advised in the premises, it is adjudged and ordered that the defendant, G. W. Woods, his agents, servants, employes, and those acting through and under him, be, and is hereby, until further order of the court, restrained and enjoined from harassing the tenants on, from collecting or attempting to collect the rents, from exercising any

acts or control whatever over, and from interfering in any manner with, plaintiff's possession of the following described lands, to wit, the Roller place, the Oldham place, the Lines place, the Brooks Todd place, the Frank Thompson place, the Fannie Reynolds place, the Will Tulley place, and the Pegram place, all located near the town of Atlee, Indian Territory; and that defendant be, and is hereby, restrained and enjoined from interfering in any manner with plaintiff's possession of the following named children, to wit, Willie Mitchell Woods and Eddie Woods. It is further ordered by the court plaintiff execute bond in compliance with the law in the sum of $1,000."

On October 18, 1901, upon motion of respondent, the temporary injunction was modified, and E. E. Morris was appointed receiver to collect the rents from the lands in controversy, except from the lands occupied by one Miller, and to hold same until court's further order. November 2, 1901, the defendant answered: "Now comes the defendant, G. W. Woods, and, for his answer to the plaintiff's complaint filed herein, denies, each and every, all and singular, the averments therein contained, except such as may be hereinafter specifically admitted. Defendant admits that the plaintiff is a citizen of the Choctaw Nation, but denies that he is a citizen of the United States, but asserts the fact to be that he is a citizen of the Choctaw Nation by intermarriage. Defendant admits that he and the plaintiff were married at the time and place set out in plaintiff's complaint. Defendant denies that he has for the past four years, or ever at any time, treated the plaintiff in a barbarous and cruel manner, or offered her any indignities whatever; denies that he ever attempted or threatened her life, or ever cursed or abused her, but alleges the fact to be that he always treated her in a kind, considerate, and loving manner, and performed always the duties of a kind and loving husband. Defendant admits that they have, as an issue of said marriage, two children as set forth in plaintiff's

complaint, but denies that the plaintiff is a suitable and proper person to have the care and custody of said children, owing to the association of the plaintiff with a dissolute and reckless, as well as immoral, class of people, and living in an atmosphere of immorality calculated to have evil effects upon the character of said children. Defendant avers the facts to be that prior to their separation the plaintiff, as he verily believes, was guilty of illicit cohabitation with various men, and that since their separation she has continually lived in adultery with various and divers men whose names are to this defendant unknown, and that she is unfit to have the care and custody of children of the ages as set out in her complaint. Defendant denies that the plaintiff is the owner and entitled to the immediate possession of the premises described in said complaint, but alleges the facts to be that at the time of their separation they had a division of the property, and set apart to the plaintiff certain property, and the balance to the defendant herein, as follows, to wit: That the plaintiff was to receive as her part of said premises the Pegram place, containing, in all, about one section of land, and that the other places, as set out in plaintiff's complaint, were to become the sole and absolute property of 'the defendant.' Defendant alleges that since said separation he has not interfered with, or in any way attempted to collect the rents, or to injure the plaintiff in the possession of the premises set apart to her by said agreement, but that, in truth and in fact, she has been renting the same, and collecting the rents, and using them for her own use and benefit. Defendant denies that he failed and refused in any manner to turn over said property that the plaintiff was justly entitled to. Wherefore, the premises considered, the defendant asks that the plaintiff take nothing by this suit, and that he be allowed judgment dissolving the bonds of matrimony between himself and the plaintiff, and that he be awarded the custody of the children, and that he have judgment forever quieting the title to the premises belonging to him, as shown by

this answer, for costs of this suit, and such other and further relief as to the court may seem equitable and just."

The cause was referred to the master to take the evidence. His report was filed, and to this respondent filed certain exceptions. "Now comes the defendant, George W. Woods, in the above styled and entitled cause, and excepts to the master's report herein for the following reasons, to wit: That said master's report is incorrect, as based upon errors of law appearing in the record. Defendant excepts to the finding of the master in which he holds that the defendant has not been enrolled as an Indian citizen, and that he would not be entitled to an interest in the land in controversy unless he was finally enrolled as an Indian citizen. Defendant excepts to that finding of the master which seeks to vest the title to the lands in controversy permanently in the plaintiff, because the title to said lands was not in issue in said cause. Defendant excepts to that portion of the master's report in which he holds that the places were the separate property of the plaintiff, inasmuch as the testimony shows that the lands were put in by the plaintiff and defendant during their married life, and would be, in law, community property. Defendant excepts to that portion of the master's report which finds that the plaintiff's allegations of cruel and abusive treatment were sustained by the testimony. Defendant excepts to that portion of the master's report which finds that the defendant's allegations of the infidelity of his wife were not sustained by the testimony. Defendant excepts to that portion of the master's report which finds that the plaintiff is entitled to the custody of the children. Defendant excepts to that portion of the master's report which subjects money in the hands of a receiver to to the payment of costs in this action, inasmuch as the order under which the receiver was appointed allowed him to collect and hold said money only. Defendant excepts to that portion of the master's finding which vests the title to the property in

controversy, with the exception of one hundred acres of land known as the 'Grant Reed Place,' in the plaintiff, and vests the possessory right in the Grant Reed place in the defendant until his citizenship has been finally determined, and that, in the event of the failure of the defendant to establish his citizenship, reinvests the plaintiff with the title and possession of said land, for the reason that, said finding is void and is sustained by no warrant of law.' Defendant further excepts to all of the master's report filed herein for the reason that the same is contrary to law and is not sustained by the testimony. Wherefore defendant prays that said cause be re-referred to the master for the taking of additional testimony, and for the purpose of filing a report in accordance with the testimony heretofore introduced."

Upon hearing the court entered the following decree: "This cause this day came on to be heard upon the report of the master in chancery filed herein, together with the exceptions thereto; and the court, having heard the same, and being fully advised in the premises, overrules said exceptions and confirms said report. It is therefore ordered, adjudged, and decreed by the court that the said report be, and the same is hereby, in all things confirmed. It is therefore ordered, adjudged, and decreed that the bonds of matrimony heretofore existing between the plaintiff and defendant be, and the same are hereby, forever dissolved. It is further ordered, adjudged, and decreed by the court that the plaintiff, Hattie Woods, do have the care and custody of the children, Willie Mitchell Woods and Eddie Woods, until the further order of the court, and that the said defendant be, and is hereby, permitted to visit said children at all reasonable times, and that he be permitted to furnish them such support as he may desire. It is further ordered, adjudged, and decreed by the court that the plaintiff, Hattie Woods, do have and recover from the defendant, Geo. W. Woods, and all persons claiming or holding under him, the possession of the

following described premises, to wit: Situated in the Chickasaw Nation, Indian Territory, and near the town of Atlee, and being known as the 'Roller Place,' the 'Oldham Place,' the 'Lines Place,' the 'Brooks Todd Place,' the 'Frank Thompson Place,' the 'Will Tulley Place,' the 'Pegram Place,' and the 'Fannie Reynolds Place,' except one hundred acres of said Reynolds place, together with suitable tenant houses, which said one hundred acres shall be designated as the place now occupied by Grant Reed, with the house now occupied by said Reed, and one hundred acres contiguous and adjacent to said house, and all in one body, in compact form, on the Fannie Reynolds place, which said one hundred acres shall be held by the defendant pending his enrollment as a member of the Choctaw tribe of Indians, and, in the event he is enrolled as a member of said tribe, he shall take said premises absolutely, but, if not so enrolled, said one hundred acres shall then revert to the plaintiff, Hattie Woods. It is further ordered that the plaintiff have a writ of restitution, placing her in possession of the above-described premises. It is further ordered that the $41,.76 collected by the receiver herein, or so much thereof as may be necessary, shall be applied to the payment of the costs herein, and the remainder thereof shall be turned over to the plaintiff."

On November 2, 1901, the following order appears to have been entered: "Master's report confirmed, to which the defendant excepts, and prays an appeal to the Court of Appeals of the Indian Territory, which is granted, and the defendant is allowed 60 days to prepare and file his bill of exceptions."

The question at once presents itself whether or not a party can appeal from an order confirming the report of a master in chancery. In other words, is it a final order? Should not appellant have waited until a decree had been entered disposing of the cause, and then, if dissatisfied with the outcome of the

litigation, prayed his appeal?   It will hardly be contended that
the confirmation of a master's report, or a refusal to confirm, is a
final disposition of the cause between the parties.   "Unless
statutes otherwise provide, questions arising in legal proceedings
cannot be reviewed in an appellate court, either on appeal or by
exception, until a final decision of the cause   has been rendered
below.   (b)   What is a final judgment?   A final judgment is
one which leaves nothing to be judicially determined between
the parties in the trial court.   It must finally conclude all the
necessary parties on the merits, and finally dispose of the subject-
matter of the controversy."   Ency. of Pleading & Practice, vol.
2, p. 52.   "The rule is well settled and of long standing that a
judgment or decree, to be final, within the meaning of that term
as used in the acts of Congress giving this court jurisdiction on
appeals and writs of error, must terminate the litigation between
the parties on the merits of the case, so that, if there should be an
affirmance here, the court below would have nothing to do but
to execute the judgment or decree it had already rendered."
Bostwick vs Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15, 27 L. Ed. 73.

But there is another question  presented, equally fatal
to the appellant here.   An examination will at once reveal the
fact that there is no assignment of errors anywhere with the
record.   That being so, what is there before this court?   Ab-
solutely nothing.   "The assignment of errors is, in effect, the
·complaint in the appellate tribunal, and hence it is necessary
that it should be so framed that issue can be joined upon it.   It
is the pleading which calls into exercise the appellate power,
and without it that power is not invoked.   By it the case is
brought into the appellate court, and upon it is formed the issue
or issues on which judgment is given in all cases except those in
which a question outside of the record is presented in an ap-
propriate mode.   In all cases where a review of previously
decided questions is sought, errors must be properly assigned."

Appellate Procedure, Elliott, § 300. "The office of the assignment of errors is to specifically and definitely present for review by the appellate tribunal the rulings of the trial court which the appealing party deems erroneous. Each specification should be complete in itself, and so framed as to clearly present the question of law upon which a decision is sought. One point only, or perhaps more accurately, one ruling, should be embraced in each specification." Appellate Procedure, Elliott, § 299. Rule 10 of the court 4 Ind. Ter. Rep. 753, (64 S. W. vi) reads: "This brief shall contain in order here stated: (a) A concise abstract, or statement of the case, presenting succinctly the questions involved, in the manner in which they are raised. (b) A specification of errors relied upon in law cases shall be set out separately and particularly each error asserted and intended to be urged; and in equity cases the specification shall state, as particularly as may be, in what the decree is alleged to be erroneous. When the error alleged is to the admission or to the rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected. When the error alleged is to the charge of the court, the specification shall set out the part referred to, totidem verbis, whether it be in instructions given or instructions refused. When the error alleged is to a ruling upon the report of a master, the specification shall state the exception to the report and the action of the court upon it. (c) A brief of the argument, exhibiting a clear statement of the points of law or fact to be discussed, with a reference to the pages of the record and the authorities relied upon in support of each point." There is no attempt to comply with this rule. See Steen vs Swadley, 5 Ind. Ter. Rep. 451, (82 S. W. 871); Grubbs vs Needles, 5 Ind. Ter. Rep. 458, (82 S. W. 873); Vider et al vs O'Brien, 62 Fed. 326, 10 C. C. A. 385.

Appeal dismissed.

CLAYTON, TOWNSEND, and GILL, JJ., concur.